ALBERT TUSON *vs.* JAMES M. CROSBY & others.

Worcester. October 6, 1898. — January 12, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Indemnity Bond — Evidence — Instructions — Exceptions.*

In an action upon a bond conditioned to indemnify the plaintiff for all loss sustained by reason of his becoming bail for A., who had been arrested upon a criminal charge, B., an attorney who had procured the plaintiff to bail A. and the bond in suit to be made, testified, on cross-examination, that he was retained by A. as his attorney. The plaintiff then asked how much his retainer was. The question was excluded, and the plaintiff then stated that he proposed to show that B. received a large sum of money from A. to indemnify the sureties, but the question was again excluded. The plaintiff then asked B. how much money he received from A. The judge excluded this question, but offered to allow the plaintiff to ask B. how much, if anything, he received to indemnify the plaintiff or the sureties on the bond. B. denied that he received any money from A. to indemnify the sureties. The plaintiff then asked B. if A. did not let him have a certain sum, stating that he desired to show that B. received a large sum of money from A., and to submit to the jury the question whether it was not received for some purpose other than that of services as counsel; but the judge excluded the evidence. *Held*, that these questions were properly excluded, in the discretion of the judge.

It cannot be contended that a bond conditioned to indemnify the plaintiff for all loss sustained by reason of his becoming bail for the principal obligor cannot be affected by subsequent parol agreements of the parties, but must be considered to remain in force until released by an instrument of equal dignity and solemnity.

The point, that there was a variance between the proof of the defence and the allegations of the answer in an action, if not raised at the trial, is not open on a bill of exceptions.

CONTRACT, upon a bond executed on June 8, 1895, by Perry Yarrington as principal, and by the defendants and others as

sureties, and conditioned to indemnify the plaintiff for all loss sustained by reason of his becoming bail for Yarrington, who had been arrested upon a requisition from the Governor of the Commonwealth on an indictment against him in the county of Worcester.[b] The joint answer of the defendants alleged, in substance, that after the execution of the bond the plaintiff agreed orally with the defendants that, if they would procure Yarrington to be surrendered to the plaintiff in this Commonwealth, in consideration thereof the plaintiff would thereupon discharge all the sureties from liability on the bond, and thereby the condition of the bond should be fully satisfied, and he would waive any further performance of such condition; that the sureties delivered Yarrington to the plaintiff and fully performed their agreement; and that the defendants were entitled in equity to be absolutely relieved against the plaintiff's cause of action by reason of such agreement and its performance, and, further, that the plaintiff agreed with the defendants to surrender Yarrington to the authorities of the county of Worcester, and the defendants requested the plaintiff to so surrender Yarrington, but the plaintiff let him go at large.

Trial in the Superior Court, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered evidence tending to show that the defendants, with the other obligors on the bond, executed the same; that the plaintiff recognized for the appearance of Yarrington, as recited in the bond; and that in August, 1895, Yarrington made default on the recognizance, and a suit was commenced by the Commonwealth against the plaintiff on his recognizance, and he paid the sum of $2,100 in settlement of that case.

The defendants called as a witness one John M. Brennan, who testified, in substance, that Yarrington was arrested in Providence, Rhode Island, just before the time of making the bond in suit, on a requisition from the Governor of Massachusetts, and was brought from Providence to Worcester and lodged in jail, on an indictment in the Superior Court; that the witness was retained as counsel for Yarrington in the matter of the indictment and requisition, and procured the plaintiff to bail him out, and further procured the bond in suit to be made, the sureties being friends and clients of the witness; that all the sureties

signed the bond at his request; that no indemnity or induce-
ment was offered to the sureties for signing the bond; that a
consideration of one hundred dollars was to be paid to the plain-
tiff for going bail for Yarrington; that, some time after the bond
was signed and Yarrington was at large upon bail, the latter
was arrested again in Providence upon a complaint that he was
a fugitive from justice from the State of New York, and was in
jail in Cranston, Rhode Island; that thereupon Brennan, acting
for all the parties, sent for the plaintiff and made an oral agree-
ment with him that Brennan would procure Yarrington to be
bailed in Providence upon the complaint, provided the plaintiff
would give a power of attorney to a person in Rhode Island
authorizing him to take Yarrington upon the Massachusetts bail
bond and bring him here; that thereupon the attorney should
bring him to Massachusetts and surrender him upon his bail
bond to the authorities here, or surrender him to the plaintiff,
and that Brennan would pay the expenses of taking Yarrington
to Massachusetts, and the plaintiff should, in consideration
thereof, discharge the sureties and surrender the bond; that the
plaintiff furnished the power of attorney, and Yarrington was
sent to Massachusetts; and that Brennan procured the bail as
agreed.   The defendants offered evidence tending to show that
the attorney under the power of attorney, one Winslow,
brought Yarrington to Massachusetts and surrendered him to
the plaintiff.

The defendants also offered other evidence corroborative of
the testimony of Brennan, with reference to the oral agreement
with the plaintiff as to the surrender of Yarrington, and as to
the agreement to discharge the sureties on the bond.

The plaintiff contradicted this evidence of the defendants,
and offered evidence tending to show that he furnished the
power of attorney at the request of Brennan for a different
purpose from that testified to by Brennan, namely, that the
sureties on the bond might be protected by having Yarrington
in Massachusetts, where the plaintiff could, if he saw fit, take
him upon his bail bond, and prevent his being taken to New
York by means of requisition papers from that State; and he
denied the contract testified to by Brennan and other witnesses
for the defendants, and denied also that he ever agreed to receive

Yarrington or to surrender him, and that Yarrington was ever surrendered to him in any manner or form.

On cross-examination, Brennan testified that he was retained by Yarrington as his attorney. The plaintiff's counsel asked him how much his retainer was. Upon objection being made, the judge excluded the evidence. The plaintiff then stated that he proposed to show that Brennan received a large sum of money from Yarrington to indemnify the sureties, but the judge excluded the question; and the plaintiff excepted.

The plaintiff then asked Brennan how much money he received from Yarrington. The judge excluded the evidence, saying that he would admit the question as to how much he received, if any, to indemnify him or the sureties on the bond; and the plaintiff excepted. Brennan denied that he received any money from Yarrington to indemnify the sureties on the bond. The plaintiff then asked the witness if Yarrington did not let him have $1,200 or more, stating that he desired to show that the witness received a large sum of money from Yarrington, and submit to the jury the question whether it was not received for some purpose other than that of services as counsel. The judge excluded the evidence, and the plaintiff excepted.

At the close of the evidence, the plaintiff asked the judge to rule as follows:

" 1. The instrument sued on in this case, being a written instrument under seal, cannot be released or waived by a mere verbal agreement, and no verbal agreement of the plaintiff to release the bond can have any effect to discharge the defendants from liability.

" 2. If the defendants executed the bond in suit and delivered it to the plaintiff, and thereafter Yarrington made default in the criminal court of Worcester and failed to indemnify and save harmless the plaintiff according to the condition of the bond, the defendants are liable, notwithstanding the fact that Yarrington was taken by an attorney of the plaintiff and brought from Rhode Island to this State, and notwithstanding the fact that the plaintiff failed to surrender him.

" 3. If the defendants executed and delivered the bond, and Yarrington made default thereon and failed to indemnify the plaintiff according to the condition of the bond, the defendants

are liable in this action, even though the plaintiff verbally agreed with Brennan, or with either of the defendants, that he would surrender the body of Yarrington to the authorities at Worcester.

" 4. If the defendants executed and delivered the bond in suit, and Yarrington voluntarily defaulted upon his recognizance in Worcester, the facts set out in the joint answer of the defendants do not constitute any defence to this action."

The judge declined to give these rulings, but instructed the jury as follows :

" If the plaintiff agreed substantially with the sureties on the indemnity bond, or the other agents, the people who represented them, if they would procure the release of Yarrington from custody in Rhode Island, and by means of a power of attorney to be given by the plaintiff to some one in Rhode Island, who should at the expense of the sureties on the indemnity bond bring Yarrington from Rhode Island to Massachusetts and there deliver Yarrington to the plaintiff to be delivered up to the authorities by the plaintiff or to be delivered under the power of attorney to the authorities in Worcester County, and that then the plaintiff should surrender to them the indemnity bond, and if the defendants performed their part of that arrangement and did deliver Yarrington to the plaintiff in Massachusetts, and the plaintiff took the control and custody of Yarrington and prevented Winslow from taking Yarrington to Worcester, or accepting Yarrington from Winslow in pursuance of the agreement he had made with the defendants, and then the plaintiff made some arrangements with Yarrington whereby Yarrington was to remain in Boston, and by reason of such an arrangement made by the plaintiff with Yarrington, Yarrington was enabled to depart so he did not appear when he was called in Worcester, then the plaintiff is not entitled to recover.   In other words, if the arrangement was made, and was fully performed on the part of the defendants, and the plaintiff took the responsibility, in this Commonwealth, of what should be done with Yarrington, and allowed him to depart for any reason, whether it was by virtue of some agreement that he had made with him, — if any consideration whatever, it is not material, but if he allowed him to go instead of surrendering him under the arrangement that

was made, then it is his fault that there was a loss on his part, and he would not be entitled to recover here."

The plaintiff excepted to the refusal to give the rulings requested, and to the instructions given.

The jury returned a verdict for the defendants; and the plaintiff alleged exceptions.

*F. P. Goulding,* (*W. C. Mellish* with him,) for the plaintiff.

*J. W. Corcoran,* (*C. F. Aldrich* with him,) for the defendants.

BARKER, J. The plaintiff contends that it was error to exclude certain questions which he put to the witness Brennan upon his cross-examination. Brennan was a counsellor at law who was retained for Yarrington in the matter of the Massachusetts indictment and requisition, and who had procured the bond in suit to be made to the present plaintiff and had procured the plaintiff to bail Yarrington. In cross-examination Brennan testified that he was retained by Yarrington as his attorney. The plaintiff then asked how much his retainer was. The question was excluded, and the plaintiff then stated that he proposed to show that Brennan received a large sum of money from Yarrington to indemnify the sureties, but the court again refused to allow the question as to how much his retainer was to be put to Brennan. The plaintiff then asked Brennan how much money he received from Yarrington. The court excluded the question, but offered to allow the plaintiff to ask the witness how much, if anything, he received to indemnify the plaintiff or the sureties on the bond. Brennan then denied that he received any money from Yarrington to indemnify the sureties on the bond. The plaintiff then asked if Yarrington did not let him have $1,200 or more; and in connection with this question the plaintiff stated that he desired to show that the witness received a large sum of money from Yarrington, and to submit to the jury the question whether it was not received for some purpose other than that of services as counsel.

We think the plaintiff's exceptions to these rulings should be overruled. The question how much Brennan received from Yarrington as a retainer was immaterial to the issues upon trial. Brennan testified that he received no money from Yarrington to indemnify the sureties on the bond. This covered the issue to which this part of the examination was directed. The further

question, whether Yarrington did not let him have $1,200 or more, without an offer to show from this witness or any other witness for what purpose the money was paid, if paid at all, is not shown to have related to any issue upon trial, and could be properly excluded in cross-examination, in the discretion of the presiding justice.

The contention that the bond in suit could not be affected by subsequent parol agreements of the parties, but must be considered to remain in force until released by an instrument of equal dignity and solemnity, is not law. *Munroe* v. *Perkins*, 9 Pick. 298. *Mill Dam Foundery* v. *Hovey*, 21 Pick. 417. *Blasdell* v. *Souther*, 6 Gray, 149, 151. *Hastings* v. *Lovejoy*, 140 Mass. 261, 264, 265. The rulings requested and refused, which all rested upon this erroneous theory of the law, were therefore rightly refused. If, as the plaintiff now contends, there was a variance between the proof of the defence and the allegations of the answer, that question does not appear to have been raised at the trial, and cannot avail the plaintiff here. Aside from any questions which might be open if the plaintiff had contended at the trial that there was a variance, we see no ground for criticising the charge.                                *Exceptions overruled.*